UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY-THOMAS CANDY CO.,

    Plaintiff,

    v.

NESTLÉ USA, INC.,

    Defendant.

Case No. 2:24-cv-3938
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant Nestlé USA, Inc.'s Motion for Judgment on the Pleadings. (ECF No. 21.) Plaintiff Anthony-Thomas Candy Co. opposes the Motion. (ECF No. 29.) Nestlé replied in support of its Motion. (ECF No. 34.) For the reasons below, the Motion is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 21.)

## BACKGROUND

This case arises from the breakdown in a business relationship between Anthony-Thomas and Nestlé. The parties' relationship began in May 2021 after Anthony-Thomas agreed to produce and package food products for Nestlé. (ECF No. 3, ¶ 4.) Under the Agreement, titled "Contract Manufacturing and Packaging Agreement," Anthony-Thomas was responsible for procuring the materials necessary to produce goods for Nestlé. (*Id.*; ECF No. 17, PageID 154, § 2.1.) In exchange, Nestlé promised to compensate Anthony-Thomas. (*See* ECF No. 17.)

To obtain a product shipment, the Agreement directed Nestlé to submit Purchase Orders to Anthony-Thomas. (ECF No. 3, ¶ 8; ECF No. 17, PageID 156, § 3.5.) Those Orders conveyed where the product was to be delivered and the date that it needed to be shipped. (*Id.*)

The Agreement contemplated forecasts to help Anthony-Thomas anticipate Nestlé's future Purchase Orders. Nestlé promised to provide Anthony-Thomas with a 52-week production forecast. (ECF No. 3, ¶¶ 6–7; ECF No. 17, PageID 155, § 3.2.) The forecasts were to be provided monthly and include firm estimates of Nestlé's production needs for four weeks in advance. (*Id.*) After the four-week commitment, Nestlé agreed to provide an estimate of its remaining production needs for the year. (*Id.*)

Anthony-Thomas asserts that Nestlé never provided a full annual production forecast or an accurate four-week firm production commitment. (ECF No. 3, ¶ 9.) Nestlé only forecasted its production needs for six months at a time, and then frequently changed its forecasts throughout the contractual relationship, says Anthony-Thomas. (*Id.* ¶¶ 11–12 (alleging that Nestlé changed the six-month forecast for July 2023 through January 2024 four times).)

In addition, Nestlé did not place any Purchase Orders. (*Id.* ¶ 10.) The parties, however, disagree about whether the Agreement required Nestlé to do so. The Agreement did not have a "volume commitment" and stated that "Nestlé shall have no obligation, whether under this Agreement or otherwise, to order or purchase any Product from [Anthony-Thomas]." (ECF No. 17, PageID 155, § 3.3.) But the Agreement did include a firm production commitment, which Anthony-Thomas asserts required Nestlé to place the Purchase Orders included in its four-week firm production forecast. (*Id.* § 3.2.) Based on the forecasts provided by Nestlé, Anthony-Thomas purchased more than $130,000 worth of materials in anticipation of producing and packaging goods for Nestlé under the Agreement. (ECF No. 3, ¶ 17.)

In July 2023, Nestlé gave notice to terminate the Agreement arguing that Anthony-Thomas failed "to deliver product in a timely manner in accordance with POs [Purchase Orders] . . . for 3 consecutive months." (*Id.* ¶ 18; ECF No. 17, PageID 167, § 14.2.5.) Again, Anthony-Thomas

2

disagrees and alleges it never received any Purchase Orders and that Nestlé wrongfully terminated the contract. (*Id.* ¶ 19.)

Section 14.2 of the Agreement outlined the process to end the parties' contractual relationship. Nestlé reserved the right "to immediately terminate" if Anthony-Thomas "failed to perform or comply with any term or condition," and "failed to cure its nonperformance or noncompliance within 30 days after its receipt of written notice." (ECF No. 17, PageID 166, § 14.2.1.) But if Anthony-Thomas "fail[ed] to timely deliver Product in accordance with POs [Purchase Orders] pursuant to Section 13.4 of the Agreement for 3 consecutive months," Nestlé could immediately terminate the contract without giving Anthony-Thomas notice and an opportunity to cure. (*Id.* PageID 166–67, § 14.2.5.)

Nestlé terminated the Agreement immediately under § 14.2.5, taking the position that Anthony-Thomas failed to timely deliver product and thus did not offer Anthony-Thomas an opportunity to cure. (*See* ECF No. 3, ¶ 18.) And Nestlé failed to compensate Anthony-Thomas for the materials purchased in anticipation of fulfilling its obligations under the Agreement. (*Id.* ¶ 22.)

Anthony-Thomas asserts that it never failed to deliver product in a timely manner, because Nestlé never placed any Purchase Orders. (*See* ECF No. 3.) Nestlé, not Anthony-Thomas, breached the Agreement, it says. (*Id.*) So Anthony-Thomas filed this lawsuit in the Franklin County Court of Common Pleas asserting three state-law causes of action for breach of contract (Count 1), fraudulent inducement (Count 2), and unjust enrichment (Count 3). (*Id.*)

Nestlé removed the case to this Court. (*See* ECF No. 1.) Since the parties are citizens of different states, and the amount-in-controversy exceeds $75,000, Nestlé asserted that diversity jurisdiction is proper. (ECF No. 3, ¶¶ 1–2 (describing Anthony-Thomas as an Ohio corporation

3

with a principal place of business in Ohio); ECF No. 1, ¶ 6 (describing Nestlé as a Delaware corporation with a principal place of business in Virginia).); *see also* 28 U.S.C. § 1332(a).

Nestlé now moves for judgment on the pleadings, and the Motion is ripe for review. (ECF No. 21.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citation omitted).

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth under Rule 8(a). Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the well-pleaded factual allegations must "plausibly give rise to an entitlement for relief." *Bates*, 958 F.3d at 480 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (internal citation omitted).

## ANALYSIS

Nestlé moves for judgment on the pleadings on all three of Anthony-Thomas's claims for relief. (*See* ECF No. 21.) The Court finds that Anthony-Thomas has plausibly alleged a breach of contract under Count 1. But Anthony-Thomas failed to state claims for fraudulent inducement and unjust enrichment, and the Court dismisses Counts 2 and 3.

**I.     Anthony-Thomas has plausibly alleged a breach of contract claim.**

To establish a breach of contract under Delaware law,[1] Anthony-Thomas must show "(1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach." *Geico Gen. Ins. v. Green*, 308 A.3d 132, 140 (Del. 2022) (internal citation omitted). Nestlé concedes that the parties' relationship was governed by an express contract but it disputes the second and third elements.

The Court starts with whether Nestlé breached the Agreement. To determine the meaning of a contract, courts begin with its plain language. *BLGH Holdings LLC v. enXco LFG Holding, LLC*, 41 A.3d 410, 414 (Del. 2012) (citation omitted). "Where, as here, the plain language of a contract is unambiguous *i.e.*, fairly or reasonably susceptible to only one interpretation," courts

---

[1] The parties agree that Delaware law governs this dispute. (ECF No. 17, PageID 171, § 17 (The Agreement is to be "construed and enforced in accordance with the laws of the State of Delaware, without regard to its law governing conflicts of laws.").) The application of Delaware law is supported by Ohio's choice-of-law rules. A court exercising diversity jurisdiction applies the choice-of-law rules of the forum state—here, Ohio. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Ohio Supreme Court has held that it will not contravene the contractual choice of the parties as to the applicable law. *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 122 (6th Cir. 1987) (citing *Jarvis v. Ashland Oil, Inc.*, 478 N.E.2d 786, 789 (Ohio 1985)). And when a contract has a broad choice-of-law provision, as it does here, the choice-of-law provision can cover claims that relate to the contract. *Isakina v. ReAlpha Tech. Corp.*, No. 2:21-cv-5901, 2023 U.S. Dist. LEXIS 198497, at *5 (S.D. Ohio Nov. 3, 2023) (Watson, J.) (citing Delaware law).

5

"construe the contract in accordance with that plain meaning and will not resort to extrinsic evidence to determine the parties' intentions." *Id.*

The Agreement contemplated a process for scheduling production and shipping product. (*See* ECF No. 17, PageID 155.) That process includes both forecasting Nestlé's future production needs and placing Purchase Orders for its current production needs. (*Id.*) Section 3.2.1 directs Nestlé to give Anthony-Thomas a forecast of its annual production needs on or before the 20th day of each month. (*Id.* ¶ 6; ECF No. 17, PageID 155.) Nestlé was to specify its four-week firm production commitment and estimate its remaining production requirements for the year. (*Id.*) To have the product shipped by Anthony-Thomas, Nestlé was to submit Purchase Orders under Section 3.5. (ECF No. 17, PageID 155, § 3.5.)

The Agreement also outlined the process for ending the contractual relationship. Nestlé reserved the right "to immediately terminate" if Anthony-Thomas "failed to perform or comply with any term or condition," and "failed to cure its nonperformance or noncompliance within 30 days after its receipt of written notice." (ECF No. 17, PageID 166, § 14.2.1.) But if Anthony-Thomas "fail[ed] to timely deliver Product in accordance with [Purchase Orders] pursuant to Section 13.4 of the Agreement for 3 consecutive months," Nestlé could immediately terminate the contract without giving Anthony-Thomas notice and an opportunity to cure. (*Id.* PageID 166–67, § 14.2.5; § 14.2.1 (listing other exceptions to the notice and opportunity to cure requirements).)

Anthony-Thomas contends that Nestlé breached the Agreement by failing to provide annual forecasts, failing to place any Purchase Orders, and by wrongfully terminating the Agreement. (ECF No. 3, ¶ 31.) Nestlé disagrees. (ECF No. 21.) Accepting as true Anthony-Thomas's factual allegations, as the Court must at this stage, Anthony-Thomas sufficiently alleged a breach of Section 3.2. Nestlé only provided 6-month forecasts and those forecasts often changed.

6

(ECF No. 3, ¶¶ 9–13.) It did not provide a 52-week forecast, or a four-week firm production commitment. (*Id.*) The Agreement unambiguously required Nestlé to provide an annual forecast and Anthony-Thomas alleges that Nestlé failed to do so.

Anthony-Thomas also sufficiently alleged that Nestlé wrongfully terminated the Agreement. Nestlé purportedly terminated the Agreement because Anthony-Thomas failed to timely deliver product. (ECF No. 3, ¶ 18.) But it was impossible for Anthony-Thomas to untimely deliver product, because it alleges Nestlé never placed any Purchase Orders. (*Id.* ¶ 20.) If that is true, then Nestlé should have terminated the Agreement under Section 14.2.1 by providing Anthony-Thomas with notice and an opportunity to cure its nonconformance within 30 days. (ECF No. 17, PageID 166, § 14.2.1.) Anthony-Thomas says it never received notice, or an opportunity to cure, Nestlé simply terminated the contract. (*See* ECF No. 3, ¶¶ 18–22.) Anthony-Thomas therefore sufficiently alleged a breach of Section 14.2.

It is less clear whether Nestlé was required to place a certain number of Purchase Orders under the Agreement. Nestlé argues it was not required to do so because the Agreement had a section titled: "No Volume Commitment." (ECF No. 34, PageID 233 (citing ECF No. 17, PageID 155, § 3.3).) True, but the same section provides a caveat for Nestlé's four-week firm production commitment. (*Id.* ("[e]xcept as otherwise provided in Section 3.2, with respect to the Firm Production Commitment").) Anthony-Thomas construes this clause as a commitment to place at least enough Purchase Orders for the production specified in its firm production commitment. (*See* ECF No. 29, PageID 214–16.) At this stage, accepting Anthony-Thomas's allegations as true, the Court finds that Anthony-Thomas has thus plausibly alleged that Nestlé breached Sections 3.2 and 3.5 by failing to place any Purchase Orders in conformity to its production forecasts. Nestlé may

7

however challenge Anthony-Thomas's interpretation of the Agreement at the summary judgment stage.

Now consider the third element of Anthony-Thomas's breach of contract claim—whether Anthony-Thomas suffered damages from the breach. A plaintiff "need not allege an exact monetary figure in order to sufficiently plead that it suffered damages from the breach of contract." *Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 453 (D. Del. 2014) (citing Delaware law). Damages for a breach of contract are usually measured by expectation damages. *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). Expectation damages put the performing party in the same position as if the breaching party had performed under the contract. *Id.*

Anthony-Thomas alleges that it purchased $130,000 of materials in anticipation of packaging products for Nestlé. (ECF No. 3, ¶¶ 17, 22.) If Nestlé had performed, Anthony-Thomas would have used those materials and would have been compensated accordingly. (ECF No. 29, PageID 215.) Instead, Nestlé allegedly never ordered any product, failed to reimburse Anthony-Thomas for the materials, and terminated the Agreement. (*Id.*)

Nestlé responds that Anthony-Thomas had "full responsibility for procurement of and payment for all raw materials . . . necessary to produce and package Product for Nestlé." (ECF No. 21, PageID 194; *see also* ECF No. 17, PageID 154, § 2.1).) Nestlé contends that the Agreement does not contemplate Anthony-Thomas recovering the cost of purchased materials, so even if Nestlé had not performed, Anthony-Thomas still would not be entitled to damages. (*Id.* PageID 195.) According to Nestlé, Anthony-Thomas had no contractual basis to recover damages and cannot satisfy the last element of its breach of contract claim. (*Id.* PageID 194–96.)

The Court finds this argument premature at this stage of the litigation. To plead damages, Anthony-Thomas need only allege damages that would put it in the same position as if Nestlé had

performed under the Agreement. *Duncan*, 775 A.2d at 1022. Anthony-Thomas alleges that it reasonably expected to receive compensation from Nestlé under the Agreement. (ECF No. 29, PageID 215.) It purchased $130,000 worth of materials to meet its obligations under the Agreement. (*Id.*) Anthony-Thomas thus alleged damages in the amount of at least $130,000. Since mathematical certainty is not required, and this amount is not based on pure speculation, the Court finds Anthony-Thomas's alleged damages to be a responsible estimate.

Further, even if Anthony-Thomas had responsibility for material procurement, as Nestlé contends, Section 2.1 would not preclude Anthony-Thomas from collecting *any* damages for Nestlé's breach, and Anthony-Thomas clearly alleges damages in its Complaint. (See ECF No. 3, ¶¶ 25, 32.) The Court finds that Anthony-Thomas has stated a claim for breach of contract based on Nestlé's failure to perform and wrongful termination.

The Motion for Judgment on the Pleadings (ECF No. 21) is **DENIED** as to Count 1.

## II. Anthony-Thomas's claim for fraudulent inducement is not pled with sufficient particularity and must be dismissed.

Nestlé makes several arguments as to why Anthony-Thomas's fraudulent inducement claim should fail. (ECF No. 21, PageID 197–99.) Nestlé reasons that because the fraud allegations are not independent of the breach of contract claim, Anthony-Thomas's fraudulent inducement claim is barred by the economic loss doctrine. (*Id.*) Fraudulent inducement is also not pled with particularity and is procedurally and substantively deficient, says Nestlé. (*Id.*)

Fraudulent inducement occurs when a party is induced to enter an agreement based on a misrepresentation. *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. N16C-07-080 PRW CCLD, 2017 Del. Super. LEXIS 117, at *12 (Super. Ct. Mar. 13, 2017) (distinguishing fraudulent inducement from conduct that induced continued performance). To state a claim for fraudulent inducement, Anthony-Thomas must allege:

9

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

*Vatidis v. Trimble, Inc.*, No. 18-998 (MN), 2019 U.S. Dist. LEXIS 130056, at *7 (D. Del. Aug. 5, 2019) (quotation omitted).

Fraud claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* Under that Rule, plaintiffs "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and specify the "who, what, when, where, and how" of the alleged fraud. *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024) (citation omitted).[2] The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (citation omitted). In sum, the plaintiff must "place the defendant[] on notice of the precise misconduct with which [it is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (citing Delaware law).

Anthony-Thomas argues that "[a]t both the initiation of and during the course of the Agreement, [the parties] had multiple discussions about materials procurement." (ECF No. 3, ¶ 16.) During those discussions, "Nestlé agreed to assume material procurement responsibilities." (*Id.*) Anthony-Thomas construed those representations to mean Nestlé would assume financial responsibilities for materials Anthony-Thomas purchased to perform its obligations under the

---

[2] The Court applies federal procedural law and Delaware state substantive law because the Court has diversity subject matter jurisdiction over this action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

10

Agreement. (*Id.*) Nestlé's representation induced Anthony-Thomas to "procure more than $130,000 in materials inventory under the guise that the Agreement would continue and Nestlé would accept certain products." (*Id.* ¶¶ 34–35.) But Nestlé has not compensated Anthony-Thomas for the materials it procured in furtherance of the Agreement and in reliance on Nestlé's representations, Anthony-Thomas argues. (*Id.* ¶¶ 36–37.)

At this early stage in the litigation, the Court accepts as true Anthony-Thomas's allegation that Nestlé represented that it would assume responsibility for materials procured by Anthony-Thomas under the Agreement. But even so, Anthony-Thomas does not indicate the date, time, or place of any misrepresentation, or specify who made the misrepresentations to which agent or employee of Anthony-Thomas. Nor does Anthony-Thomas allege that Nestlé had knowledge its representation was false or made with reckless indifference to the truth. *See Vatidis*, 2019 U.S. Dist. LEXIS 130056, at *7. The Complaint does not satisfy the heightened pleading standard for fraud claims or allow the Court to draw the reasonable inference that Nestlé committed the misconduct alleged under Count 2.

Furthermore, even if Anthony-Thomas alleged fraudulent inducement with the requisite particularity, Anthony-Thomas cannot recover under theories of tort and contract for the same conduct. Under Delaware law, when an action is based "entirely on a breach of contract," and "not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, No. N14C-10-236 JRJ CCLD, 2015 Del. Super. LEXIS 320, at *16 (Super. Ct. June 24, 2015).

If, as here, a complaint alleges fraud contemporaneously with a breach of contract, the fraud claim survives only if premised on conduct that is separate and apart from the conduct constituting breach. *See Sch. Emps. Ret. Sys. of Ohio v. Sharpen Techs., Inc.*, No. 2:23-cv-2928,

11

2024 U.S. Dist. LEXIS 52532, at *5 (S.D. Ohio Mar. 25, 2024) (Watson, J.) (quoting *Norman v. Elkin*, 860 F.3d 111, 130 (3d Cir. 2017) (citing Delaware law)). Inducing one party to continue to perform under a contract is not separate and distinct conduct from a breach of contract. *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. N16C-07-080 PRW CCLD, 2017 Del. Super. LEXIS 117, at *12 (Super. Ct. Mar. 13, 2017) (citing *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, No. N15C-02-161 WCC, 2016 Del. Super. LEXIS 328, at *11 (Super. Ct. July 1, 2016)).

Anthony-Thomas alleges that Nestlé's purported false misrepresentations induced it to continue to perform under the Agreement. Anthony-Thomas asserts: "Prior to Nestlé's notice of termination," Nestlé induced Anthony-Thomas to purchase materials "under the guise that the Agreement would continue and Nestlé would accept the certain products that Anthony-Thomas would produce under the Agreement." (ECF No. 3, ¶ 34 (emphasis added).) In other words, Anthony-Thomas takes issue with Nestlé's conduct *after* the Agreement was executed but *before* termination—not Nestle's conduct before the contract was formed. Anthony-Thomas's continued performance is not separate and distinct conduct from the allegations that Nestlé breached the Agreement. Without an injury separately caused by fraud, dismissal is warranted.

The Motion for Judgment on the Pleadings is **GRANTED** as to Count 2. (ECF No. 21.)

### III. Anthony-Thomas's unjust enrichment claim fails to state a claim upon which relief may be granted.

Nestlé next argues that Anthony-Thomas's unjust enrichment claim must fail because the parties agree that there is an enforceable contract. (ECF No. 21, PageID 199–200.) Anthony-Thomas counters that the claim is pled in the alternative to its breach of contract claim. (ECF No. 29, PageID 220–22.)

Anthony-Thomas pled the unjust enrichment claim in the alternative, which is allowed under Rule 8(d)(2) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2). To establish

12

a claim of unjust enrichment, Anthony-Thomas must demonstrate: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

In this case, the fifth element is dispositive because Anthony-Thomas's breach of contract claim provides a remedy at law. The parties agree that their Agreement was an enforceable contract that governed their relationship. (*See* ECF No. 17.) An enforceable contract generally stops an unjust enrichment claim. *Bakerman v. Sidney Frank Importing Co.*, No. 1844-N, 2006 Del. Ch. LEXIS 180, at *67 (Del. Ch. Oct. 10, 2006) (explaining that unjust enrichment is a "theory of recovery to remedy the absence of a formal contract"). "Claims of unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain." *Id.* (citation omitted). But the validity of the Agreement is not in doubt or uncertain. (ECF No. 21, PageID 199–200; ECF No. 29, PageID 221.) Since the parties agree an enforceable contract controls their relationship, the unjust enrichment claim must be dismissed. *See id.* (citing *ID Biomedical Corp. v. TM Techs.*, No. 13269, 1995 Del. Ch. LEXIS 34, at *39 (Del. Ch. Mar. 16, 1995)).

Even if Anthony-Thomas plausibly alleged the fifth element, it fails to show how Nestlé was enriched to Anthony Thomas's detriment. Anthony-Thomas purchased materials to produce goods for Nestlé. But Anthony-Thomas alleges that Nestlé never ordered any goods and refused to compensate it for the materials. While these allegations demonstrate how Anthony-Thomas was harmed, or impoverished, they do not illustrate what benefit Nestlé received. Since Anthony-Thomas cannot demonstrate the first or fifth factors, the unjust enrichment claim must be dismissed for failure to state a claim upon which relief may be granted.

The Motion for Judgment on the Pleadings (ECF No. 21) is **GRANTED** as to Count 3.

## CONCLUSION

For the reasons above, Nestlé's Motion for Judgment on the Pleadings (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**. Anthony-Thomas's claims for fraudulent inducement and unjust enrichment (Counts 2 and 3) are **DISMISSED**. Anthony-Thomas may proceed on its breach of contract claim (Count 1).

This case remains open.

**IT IS SO ORDERED.**

**8/21/2025**                                                                    s/Edmund A. Sargus, Jr.
**DATE**                                                                       **EDMUND A. SARGUS, JR.**
                                                                                  **UNITED STATES DISTRICT JUDGE**